IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOSHUA MASSETT,                                    05-CV-1006-BR

                    Plaintiff,                     OPINION AND ORDER

v.

JO ANNE B. BARNHART,
Commissioner of Social
Security,

                    Defendant.


**TIM D. WILBORN**
Tim D. Wilborn, Attorney At Law
2020-C SW 8th Avenue
PMB #294
West Linn, OR 97068
(503) 697-7019

            Attorney for Plaintiff

**KARIN J. IMMERGUT**
United States Attorney
**NEIL J. EVANS**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053


1  -   OPINION AND ORDER

**MICHAEL McGAUGHRAN**
Office of the General Counsel
**DAVID M. BLUME**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2545

       Attorneys for Defendant

**BROWN, Judge.**

      Plaintiff Joshua Massett seeks judicial review of a final decision of the Commissioner of the Social Security Commission denying Massett's applications for disability insurance benefits (DIB) and supplemental security income payments (SSI) under Titles II and XVI of the Social Security Act.  This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

      Following a thorough review of the record, the Court **REVERSES** the Commissioner's decision and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order.

## BACKGROUND

      Massett was born June 3, 1982.  Tr. 61.[1]  He has a high-school education and has performed past relevant work as an

---

     [1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

automobile detailer and retail sales clerk.  Tr. 70.

Massett has degenerative disk disease and alleges onset of disability from August 4, 2002.  He applied for DIB and SSI on September 27, 2002, and his applications were denied.  A hearing was held before an Administrative Law Judge (ALJ) on October 4, 2004.  At the hearing, Massett was represented by an attorney. Massett and a vocational expert (VE) testified at the hearing.

Although Massett satisfied the insured status requirements for a claim under Title II through June 30, 2003, he was required to show that he was disabled on or before that date to prevail on his DIB claim.  *See* 42 U.S.C. § 423(a)(1)(A).  *See also Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).

The ALJ issued his decision on December 18, 2004, in which he concluded Massett was not disabled.  That decision became the final decision of the Commissioner on April 30, 2005, when the Appeals Council denied Massett's request for review.


**STANDARDS**

The initial burden of proof to establish disability rests with the claimant.  *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995).  To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a

3  -   OPINION AND ORDER

continuous period of not less than 12 months." 42 U.S.C.
§§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner bears the
burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d
841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g). *See also Batson v. Comm'r of Soc. Sec.
Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial
evidence means more than a mere scintilla but less than a
preponderance; it is such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion." *Andrews v.
Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.
2001). The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision.
*Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The
Commissioner's decision must be upheld even if the "evidence is
susceptible to more than one rational interpretation." *Andrews*,
53 F.3d at 1039-40. The court may not substitute its judgment
for that of the Commissioner. *Batson*, 359 F.3d at 1193. The
record as a whole, however, must be considered. *Howard v.*

*Heckler*, 782 F.2d 1484, 1487 (9th Cir. 1986).  A decision "cannot be affirmed simply by isolating a specific quantum of supporting evidence."  *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)(citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

## DISABILITY ANALYSIS

The Commissioner has established a five-step sequential evaluation to determine whether a person over the age of 18 is disabled within the meaning of the Act.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  *See also* 20 C.F.R. §§ 404.1520, 416.920.

If the adjudication proceeds beyond Step Three, the Commissioner must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related activities that the claimant can still do on a regular and continuing basis despite the limitations imposed by his impairments.  20 C.F.R. §§ 404.1545, 416.945.  *See also* Social Security Ruling (SSR) 96-8p.  Massett challenges the ALJ's RFC assessment.

At Step Four, the Commissioner must determine whether the claimant retains the RFC to perform work that he has done in the past.  If the ALJ determines the claimant retains the ability to perform his past work, the Commissioner will find the claimant not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  The ALJ

5  -   OPINION AND ORDER

found Massett was not able to perform his past work.

At Step Five, the Commissioner must determine whether the claimant can perform work that exists in the national economy. *Bowen v. Yuckert*, 482 U.S. at 142. *See also* 20 C.F.R. §§ 404.1520(e),(g); 416.920(e),(g).  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).  If the Commissioner meets this burden, then the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.  Massett challenges the ALJ's conclusion that he can perform other work in the national economy and asserts the Commissioner failed to meet her burden at Step Five.


## ALJ's FINDINGS

The ALJ found the medical evidence established that Massett had a severe impairment of degenerative disk disease.  Tr. 22. He concluded Massett's impairment did not meet or equal the criteria for a listed impairment enumerated in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments).  Tr. 23. The ALJ found Massett retained the RFC to perform simple, routine, repetitive work at a sedentary level of exertion with a limit of sitting, standing, or walking for thirty minutes at a time.  Tr. 24-25.

The ALJ elicited testimony from an impartial VE.  Tr. 380-82.  The ALJ asked the VE whether an individual of Massett's age, education, and experience who was limited to simple, routine, repetitive work at a light level of exertion with a limitation of standing and walking for only thirty minutes at a time could perform Massett's past relevant work.  The VE responded the individual could not perform Massett's past relevant work, but he could perform work as a cashier, new-account clerk, and electronic assembler.  The ALJ then asked the VE whether an individual with the same limitations but limited to a sedentary level of exertion could work as a cashier, new-account clerk, and electronic assembler.  The VE responded the individual could not perform the electronic assembly job.  The ALJ posed a third hypothetical question in which he added the limitation of requiring a thirty-minute rest period every two hours.  The VE testified competitive employment would be precluded by that additional limitation.

The ALJ found Massett could not perform his past relevant work, but that he could perform work that exists in significant numbers in the economy.  Accordingly, the ALJ concluded Massett was not disabled within the meaning of the Social Security Act. Tr. 25.

## DISCUSSION

Massett alleges the ALJ improperly rejected the opinion of his treating physician, Steven Vander Waal, M.D.  He contends the ALJ also erred when he rejected Massett's testimony and the written testimony of his mother.  Massett also alleges the Commissioner failed to meet her burden to identify other work in the national economy that Massett could perform.

## I.   **Medical Background**

Massett was a high-school athlete who underwent a spinal laminectomy at age seventeen.  Tr. 305, 317.  He sought treatment through the PeaceHealth Medical Group in January 2000 for back pain that recurred approximately eight months following his surgery.  Tr. 283.  In October 2000, Massett suffered radiating back pain; was released from work for two days; and was instructed not to do any activity involving twisting, bending, and lifting.  Tr. 280.  He was diagnosed with lumbar strain and some symptoms of disk syndrome, including decreased range of motion and radiculopathy.  Tr. 279.

Massett began treatment with Dr. Vander Waal in March 2002 for degenerative disk disease of the lumbar spine and thoracic strain.  Dr. Vander Waal prescribed Skelaxin, Vioxx, and Vicodin. Tr. 136.  In August 2002, Dr. Vander Waal ordered spinal x-rays due to Massett's complaints of increased pain and numbness in his left foot.  Tr. 134-36.  Dr. Vander Waal diagnosed lumbar

8  -   OPINION AND ORDER

radiculopathy and prescribed Mobic, Skelaxin, and Tylenol #3.
Tr. 135.

Massett was treated for back pain at Columbia Memorial
Hospital Emergency Department on October 15, 2002; given Naprosyn
and Tylenol #30; and referred for an MRI.  Tr. 140-41.  The MRI
report compared the findings with a previous MRI from November
1998.  The report indicated:

> There has been marked progression of degenerative
> disc disease primarily at L2-3 and L4-5 which now
> shows dessication and narrowing whereas these
> discs were intact on prior exam.  Additionally,
> there is a central disc protrusion at L2-3 which
> is new.  This does deform the thecal sac but I
> doubt any high grade neural compromise.  Annular
> bulge at L4-5 is new.  It is eccentric towards the
> left.  No evidence for high grade neural
> compromise.  Central disc protrusion again noted
> at L5-SI but it is more prominent than before and
> now there is an ill-defined low-signal defect on
> the left suggesting disc extrusion.  This low-
> signal defect extends to the left SI nerve root
> but does not compress it.

Tr. 182.  Dr. Vander Waal continued treating Massett and referred
him to Oregon Health Sciences University (OHSU) for evaluation by
a neurosurgeon.

Johnny B. Delashaw, M.D., a neurosurgeon from OHSU, examined
Massett and wrote a report to Dr. Vander Wall on December 18,
2002.  Tr. 154-55.  Dr. Delashaw noted the disk protrusions
evident on the MRI and recommended trying epidural steroid
injections.  Dr. Delashaw stated Massett also may have

9 -   OPINION AND ORDER

discogenic back pain because of the degenerative disk disease apparent on his MRI.  If the epidural injections failed to work, he suggested a discogram and potential fusing of the vertebrae at L5-S1.  *Id.*  In January 2003, Sharon Eder, M.D., a state agency consultant, determined Massett's RFC at a medium-exertional level with only occasional stooping and crouching.  Tr. 171-78.  In May 2003, Dorothy Anderson, Ph.D., a psychologist and state agency consultant, determined Massett did not have any medically determinable psychiatric impairment.  Tr. 156-68.

In May 2003, Massett began treatment at OHSU with Myrdalis Diaz-Ramirez, M.D.  Tr. 203-04.  She diagnosed lumbar spondylosis with myelopathy and noted decreased range of motion in the lumbar spine and decreased sensation to pin-prick.  In addition to epidural steroid injections, Dr. Diaz-Ramirez  recommended Ultracet, Vioxx, and Celebrex.  *Id.*  After beginning a trial of the epidural injections, Massett was referred to physical therapy.  Tr. 201-02.

Massett was assessed at the OHSU Pain Center on July 30, 2003.  Tr. 191-96.  He was diagnosed as having lumbar spondylosis with myelopathy, major depressive disorder, psychic factors associated with disease, and pain disorder associated with both psychological factors and his general medical condition.  He was

assigned a Global Assessment of Functioning (GAF) score of 50.[2]
Massett continued treatment at the OHSU Pain Clinic through
September 2003.  He was treated for "significant degenerative
disk disease" with disk space narrowing at L3-L4 and L5-S1.  He
was prescribed Oxycontin, MS Contin, and Methadone.  Tr. 184-90.
OHSU recommended mental-health treatment for depression, for
anger, and for dealing with his learning disabilities.  *Id.*
Massett declined treatment.

Massett resumed physical therapy in September 2003.
Tr. 210-12.  The physical therapist noted Massett had limited
activity and primarily stayed in bed.  The physical therapist
also noted Massett walked stiffly and had notable muscle weakness
in his legs.  His previous physical therapy ended with expiration
of his insurance in December 2002.

In October 2003, Massett returned to Dr. Vander Waal for
primary and follow-up care.  Dr. Vander Waal noted the Methadone
was working reasonably well in controlling Massett's pain.
Tr. 180.  In May 2004, Dr. Vander Waal prescribed Prozac for
Massett's depression and anxiety.  *Id*.  He continued to treat

---

[2] The GAF is a scale from 1 to 100 in ten-point increments
that is used by clinicians to determine the individual's overall
functioning.  A GAF of 41 to 50 indicates serious symptoms
(suicidal ideation, severe obsessional rituals, frequent
shoplifting) or any serious impairment in social, occupational,
or school functioning (*e.g.*, few friends, unable to keep a job).
*Diagnostic and Statistical Manual of Mental Disorders* at 34 (4th
ed. 2000).

Massett with prescriptions of Methadone and Prozac.

In September 2004, Dr. Vander Waal completed a "Lumbar Spine RFC" form and stated Massett could sit for forty-five minutes, stand for one hour, and sit/stand/walk for two hours in an eight-hour day.  Dr. Vander Waal noted Massett needed a job that permitted shifting positions at will and unscheduled breaks every hour for twenty to thirty minutes.  He further noted Massett should be limited to lifting no more than ten pounds and should never twist, stoop, or climb.  Tr. 238-42.

## II.  RFC Determination

### A.  Dr. Vander Waal

Massett asserts the ALJ erred when he failed to adopt all of the work restrictions contained in Dr. Vander Waal's "Lumbar Spine RFC" questionnaire.  The ALJ found:

> As a treating medical source, Dr. Vander Waal's opinions deserve significant consideration; however, there is no evidence objective (*sic*) evidence to support his opinions.  Dr. Vander Waal reported a neurological examination revealed no focal deficits and an examination of the claimant's back revealed no tenderness to palpation (Exhibit 10F).  As such, it is appears (*sic*) that much of the information Dr. Vander Waal used in making his assessments came from the claimant's own reports without any objective corroboration.  Because Dr. Vander Waal's opinion as to the claimant's residual functional capacity are not well supported by medically acceptable clinical and/or laboratory diagnostic studies and are inconsistent with other substantial evidence

in the case record, his opinions cannot be given
controlling weight. (Social Security Ruling 96-2p
[07/02/96]).

Tr. 24.

A treating physician's opinion generally is afforded the
greatest weight in disability cases because the treating
physician is "employed to cure and has the best opportunity to
know and observe the patient as an individual." *Ramirez v.
Shalala*, 8 F.3d 1449, 1453 (9th Cir. 1993)(citations omitted).  A
treating physician's opinion is controlling when it is "well-
supported by medically acceptable clinical and laboratory
diagnostic techniques and is not inconsistent" with other
evidence of record.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).
The ALJ can reject a treating physician's opinion that is not
contradicted by another physician only for clear and convincing
reasons.  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).
The ALJ can reject a treating physician's opinion that is
controverted only if he makes "findings setting forth specific,
legitimate reasons for doing so that are based on substantial
evidence in the record."  *Id.* (quoting *Magallanes v. Bowen*, 881
F.2d 747, 751 (9th Cir. 1989)).

The ALJ found the record did not reflect any objective
evidence to support Dr. Vander Waal's opinion, but the ALJ did
not address the medical evidence that constituted the "conflicts
and ambiguities" in the record.  Tr. 24.  *See also Edlund v.*

13 -   OPINION AND ORDER

*Massanari,* 253 F.3d at 256.  "To [merely] say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim." *Embrey v. Bowen,* 849 F.2d 418, 421 (9th Cir. 1988).  Although the ALJ notes Massett had translaminar epidural steroid injections, he does not discuss the treatment record from OHSU or whether it supports Dr. Vander Waal's opinion.  The OHSU treating physician, Dr. Diaz-Ramirez, diagnosed lumbar spondylosis with myelopathy and gave Massett epidural steroid injections.  Tr. 199-200, 203-04.  In addition, the examining neurosurgeon at OHSU suggested Massett have spinal surgery if other treatment options were unsuccessful.  Tr. 154-55, 189.  One back surgery, however, already had failed, and Dr. Vander Waal recommended waiting for Massett to have further surgery.  Tr. 199, 246.  Dr. Diaz-Ramirez prescribed opiates and methadone for Massett's back pain.  Tr. 186-89.

The ALJ also failed to address whether Dr. Vander Waal's opinion was consistent with the results of the MRI report from 2002 or the physical-therapy record discussed above.

The ALJ cites Dr. Vander Waal's clinical notes, which reflect "no focal deficits" and no tenderness to palpation as evidence that Dr. Vander Waal based his opinion solely on

14 -    OPINION AND ORDER

Massett's complaints.  Tr. 24.  The significance of those
notations to Massett's particular limitations, however, is
unclear.  The neurosurgeon from OHSU, on the other hand,
specifically noted Massett's discogenic pain, which may be
difficult to detect during a routine physical examination.[3]

The state agency consultants concluded Massett had an RFC at
a medium-exertional level.  This determination was made before
Massett was diagnosed and treated by Dr. Diaz-Ramirez at OHSU.
Although the ALJ stated he gave significant weight to the state-
agency consultants, he did not adopt an RFC assessment with a
medium-exertional level.  The ALJ determined Massett's RFC was a
sedentary level of exertion with limitations of sitting,
standing, or walking up to thirty minutes at a time.  Thus, the
ADJ's RFC assessment appears more consistent in some ways with
parts of Dr. Vander Waal's discounted opinion.

Even though the ALJ failed to explain adequately how the
medical evidence in the record is inconsistent with Dr. Vander
Waal's opinion, the Court notes Dr. Vander Waal's opinion overall

---

[3] "Discogenic pain typically increases with sitting, flexion,
coughing, sneezing, or activities that increase intradiscal
pressure . . . .  Physical examination does not yield significant
information when dealing with internal disc derangement."  Robert
E. Windsor, M.D., Kevin P. Sullivan, M.D., Erik D. Hiester,
D. O., *Lumbosacral Discogenic Pain*, Pt. Three (Andrew Perron,
M.D., Francisco Talavera, Ph.D., Henry Goitz, M.D., Jan
Whithurst, M.D., Wylie D. Lowery, Jr. M.D. eds. 2006),
http://www.emedicine.com/SPORTS/topic64.htm (last visited
November 13, 2006).

is not sufficient to establish disability.  The checklist
questionnaire completed by Dr. Vander Waal contains little
explanation of his opinion.  In addition, it is not clear from
the form whether a rest break means a change from standing and
walking or an hourly break from the work environment.  A treating
physician's opinion that is conclusory or in the form of a
checklist or questionnaire is not dispositive.  *See Young v.
Heckler,* 803 F.2d 963 (9th Cir. 1986).  Thus, even though
Dr. Vander Waal's questionnaire opinion is not sufficient to
establish disability, the Court, nevertheless, finds it raises an
issue regarding the extent of Massett's limitations that was not
adequately addressed by the ALJ.

On this record, the Court finds the ALJ erred when he
discounted Dr. Vander Waal's opinion without giving specific
reasons supported by the record for doing so and failing to
identify and to address any inconsistency in the medical evidence
that supports the weight given to Dr. Vander Waal's opinion.

**B.  Credibility Determination**

Massett also asserts the ALJ failed to evaluate properly
Massett's testimony regarding his limitations and pain.

The ALJ must assess the credibility of the claimant
regarding the severity of symptoms only if the claimant produces
objective medical evidence of an underlying impairment that could
reasonably be expected to produce the symptoms.  *Smolen v.*

*Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  When there is an underlying impairment and not any evidence of malingering, an ALJ may discredit a claimant's testimony regarding the severity of symptoms only by providing clear and convincing reasons based on specific findings.  *Id* at 283-84.  *See also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  Here the ALJ did not find any evidence of malingering and, therefore, is required to provide clear and convincing reasons for rejecting Massett's testimony.

The ALJ found Massett "generally credible to the extent he does have medically determinable impairments that do cause vocationally relevant limitations." Tr. 23.  The ALJ, however, found Massett not credible as to his ability to work.  One reason given by the ALJ was inconsistency with the medical record.  As noted, however, it is not clear whether there is an inconsistency in this medical record.

The Court, therefore, finds the ALJ erred when he rejected Massett's testimony without providing legally sufficient reasons supported by evidence in the record for doing so.

**C.  Lay-Witness Testimony**

Massett asserts the ALJ erred when he rejected the written testimony of Jamie Dunn, Massett's mother.

The ALJ found Dunn's testimony was of little use in evaluating Massett's RFC because Dunn "is not trained to critically evaluate whether the claimant's complaints are

exaggerated or inconsistent with objective evidence." Tr. 24.
The ALJ further noted evidence from medical professionals was
"more reliable" because they are "trained to evaluate and assess
impairments and their impact on functional capacity." *Id.* Lay
witnesses, however, are not ordinarily trained in evaluating
symptoms. Nevertheless, "[f]riends and family members [are] in a
position to observe a claimant's symptoms and daily activities
[and] are competent to testify as to the claimant's condition."
*Dodrill v. Shalala*, 12 F.3d at 918-19. Such testimony cannot be
disregarded without comment. *Nguyen v. Chater*, 100 F.3d 1462,
1467 (9th Cir. 1996). If the ALJ wishes to discount lay-witness
testimony, he must give reasons that are germane to each witness.
*Dodrill v. Shalala*, 12 F.3d at 919. Inconsistency with medical
evidence may be one such reason. *Lewis v. Apfel,* 236 F.3d 503,
511 (9th Cir. 2001).

The Commissioner asserts the ALJ had the discretion to give
more weight to medical evidence. As noted, however, the medical
record in this case was not fully discussed or developed. In
addition, the ALJ did not address any specific medical evidence
that conflicted with Dunn's testimony, but improperly discounted
all of Dunn's testimony merely because it was lay testimony.

The Court, therefore, finds the ALJ erred when he discounted
Dunn's testimony without providing legally sufficient reasons
supported by evidence in the record for doing so.

## II.  Step-Five Determination

Massett asserts the Commissioner failed to identify other work in the national economy that Massett could perform.

For information about the requirements of work, the Commissioner relies primarily on the United States Department of Labor publication, *Dictionary of Occupational Titles* (DOT), including its companion publication, *Selected Characteristics of Occupations*.  20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(b). *See also* SSR 00-04p.  Jobs are classified by exertional level as defined in 20 C.F.R. §§ 404.1567 and 416.967 and by skill level as defined in 20 C.F.R. §§ 404.1568 and 416.968.  A VE may be used to provide more specific information about the requirements of a particular job as it is performed in a particular setting. SSR 00-04p.

As noted, the ALJ asked the VE whether a person of Massett's age, education, and experience with an RFC of light-exertional level; a limitation of walking or standing for thirty minutes at a time; and a limitation to simple, routine, repetitive work could perform Massett's past relevant work.  The VE responded the individual could not perform Massett's past relevant work, but he could perform work as a cashier, new-account clerk, and electronic assembler.  The ALJ then asked the VE whether an individual with the same limitations and a sedentary level of exertion could work as a cashier, new-account clerk, and

19 -   OPINION AND ORDER

electronic assembler.  The VE responded the individual could not perform the electronic assembly job, but he could perform the other jobs.

Massett contends the VE's testimony conflicts with the DOT listings, and the VE failed to explain the discrepancy.  Massett specifically asserts the jobs listed by the VE are classified as light exertional by the DOT and, therefore, exceed his RFC of sedentary work.

The ALJ may rely on the VE's testimony when it conflicts with the DOT if the ALJ provides a reasonable explanation based on evidence in the record.  *Johnson v. Shalala,* 60 F. 3d 1428, 1435 (9th Cir. 1995).  *See also* SSR 00-04p.  The ALJ, however, did not discuss any conflict with the DOT nor provide a reasonable explanation for his deviation from the DOT in his conclusion.

The Commissioner contends she found a new-account clerk job listed in the DOT at the sedentary level of exertion.  Massett asserts the job cited by the Commissioner has a "Reasoning Level" of three and exceeds his RFC of simple, routine, repetitive work. This is an issue that requires a VE's expertise.  The ALJ failed to elicit sufficient testimony from the VE during the hearing regarding this issue and did not resolve the conflicts between the VE testimony and the DOT.

The Court, therefore, finds the ALJ erred when he did not

ask the VE to address the conflict with the DOT as to jobs that could be performed at Massett's level of exertion.

## CONCLUSION

For these reasons, the Court finds remand for further proceedings is appropriate to correct the ALJ's errors. Accordingly, the Court **REVERSES t**he Commissioner's final decision and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 17th day of November, 2006.


/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge